UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

PETER J. GOULD,

                      Plaintiff,                      15 Civ. 7964 (PAE)

              -v-                                OPINION & ORDER

AIRWAY OFFICE, LLC, DONALD LABRECQUE,
ROBB S. KRUEGER, and DOES 1–20,

                   Defendants.

------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 7/19/16

PAUL A. ENGELMAYER, District Judge:

      Plaintiff Peter J. Gould, proceeding *pro se*, brings this action under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.*, in connection with a dispute over the ownership of, and the right to use, certain real property located in Portage, Michigan. Those rights were previously the subject of a suit in Michigan state court, which resulted in the entry of a default judgment adverse to Gould. Defendants Airway Office, LLC ("Airway"), Donald Labrecque, and Robb S. Krueger (collectively, "defendants") now move to dismiss the complaint for, *inter alia*, lack of subject matter jurisdiction, under Federal Rule of Civil Procedure 12(b)(1). As explained below, defendants' motion to dismiss on that ground is granted, based on the *Rooker–Feldman* doctrine, which precludes this Court from exercising jurisdiction over a collateral attack on a state-court judgment.

**I.     Background**

    **A.     Facts**[1]

In or about 1986, Gould purchased "the land then known as the Portage Auto Drive-In Theater" ("Auto Drive-In") in Portage, Michigan. Compl. at 3. Gould cleared the land, installed various systems (*e.g.*, storm water, electrical, telephone, etc.), and paved parking areas on "the portion of the land now known as 5528 and 5564 Portage Road as well as the property known as 2400 Yellow Brick Road." *Id.* According to the Complaint, the "only existing building in the development area" at the time was 5626 Portage Road, owned by Gordon Krum, "who also owned the Airways Bowling Alley." *Id.*[2]

The Complaint also alleges that "Portage"[3] entered into an agreement with Krum that the sewer system Portage was installing would "collect and treat the storm water from both the Airways office building as well as the Airways Bowling [sic], at no cost to Krum." *Id.* Portage

---

[1] The Court's account of the underlying facts in this case is drawn from the Complaint, Dkt. 1 (the "Complaint" or "Compl."), and the exhibit attached to the Complaint (an aerial photo of the property in question, Compl., Ex. A ("Exhibit A")). For the purpose of resolving the motion to dismiss, the Court assumes all well-pled facts to be true and draws all reasonable inferences in favor of plaintiff. *See Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012). The Court also considered a document attached to the motion to dismiss, a Michigan state-court judgment. Dkt. 10, Ex. B (the "Default Judgment"). Because the Default Judgment is incorporated in the Complaint by reference and relied upon by plaintiff, and is a matter of public record of which judicial notice may be taken, it is properly considered on a motion to dismiss. *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152–54 (2d Cir. 2002).

[2] Although the Complaint is not explicit on this point, its implication is that Krum, not Gould, owned the property now known as 2400 Yellow Brick Road. *See* Compl. at 3–4 (claiming right to possess and use the land under Michigan's adverse possession statute).

[3] The Court understands the Complaint here to refer to "Portage Partners, Inc." ("Portage Partners"), the defendant in the Default Judgment action.

also "built a building known as 2400 Yellow Brick Road which included paved parking areas to the west of the Airways office building parking lot." *Id*. at 4.

Exhibit A to the Complaint, an aerial photo from Google Maps of the property in question, shows the relationship between these various properties. Yellow Brick Road (or Yellowbrick Road) runs east-west, and forms a T-intersection with Portage Road, which runs north-south. The properties referenced above are arranged, from north to south, as follows: The properties now known as 5528 and 5564 Portage Road are on the north side of Yellow Brick Road, and 2400 Yellow Brick Road is located on the south side. The property known as 5626 Portage Road (the building owned by Krum), is located just south of 2400 Yellow Brick Road. Both 2400 Yellow Brick Road and 5626 Portage Road have small parking areas to the west of their respective buildings and which abut each other. The property that is the subject of the present dispute, as indicated on Exhibit A, is the parking area to the west of 2400 Yellow Brick Road. See Compl., Ex. A.

Gould alleges that he has the right to possess and use the parking area at 2400 Yellow Brick Road by virtue of his having initially paved, and continuously used and maintained, the area for 15 years without interference from Krum. Compl. at 4 (citing Mich. Comp. Laws § 600.5801). At some unspecified point, however, the "Defendant"[4] purchased the property from Krum. *Id.* The "Defendant" filed suit in state court, the 9th Circuit Court for the County of Kalamazoo, Michigan, to "recover what they thought was there [sic] exclusive use of the . . . land." *Id.*; *see also* Default Judgement.

---

[4] It is not clear in the Complaint to which defendant this refers.

On June 22, 2015, the state court entered default judgment against Portage Partners, holding that "Portage Partners, Inc.[] has no legal, equitable or other interest in the real property located at 5600 Portage Road, Portage Michigan 49002." Default Judgment at 1 (citing attached exhibit setting out legal description of the property). The Default Judgment further provided that Portage Partners "was unlawfully trespassing on [Airway's] property." *Id.* at 2. It enjoined Portage Partners from entering, occupying, or using the property. *Id.* at 1.

### B. Procedural History

On October 8, 2015, Gould filed the Complaint. Dkt. 1. On February 10, 2016, defendants filed a motion to dismiss, Dkt. 10, along with a memorandum of law, Dkt. 14 ("Def. Br."), and declarations in support, Dkts. 11, 12, 13. On February 16, 2016, the Court issued an Order directing Gould to either oppose the motion to dismiss or amend the Complaint by March 23, 2016. Dkt. 17. That Order was sent by certified mail to Gould's address, but Gould took no action. On May 9, 2016, the Court, *sua sponte*, issued a second Order directing Gould to file any opposition to the motion to dismiss, or seek leave to file an amended complaint, by June 6, 2016. Dkt. 18. That Order was also sent by certified mail to Gould's address. To date, Gould has taken no further action. As such, the Court decides the motion to dismiss on the present record.

## II. Applicable Legal Standard

A plaintiff's failure to oppose a motion to dismiss does not by itself merit dismissal of a complaint. *See Goldberg v. Danaher*, 599 F.3d 181, 183–84 (2d Cir. 2010); *McCall v. Pataki*, 232 F.3d 321, 322–23 (2d Cir. 2000). In deciding an unopposed motion to dismiss, a court is to "test only its legal sufficiency" according to the principles ordinarily applicable on a motion to dismiss. *McCall*, 232 F.3d at 322.

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Morrison v. Nat'l Austl. Bank Ltd.,* 547 F.3d 167, 170 (2d Cir. 2008) (internal quotation marks and citation omitted). "The court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff, but jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it." *Id.* (internal quotation marks and citations omitted). Additionally, the Court may properly refer to matter outside the pleadings when considering the existence of jurisdiction on a motion pursuant to Rule 12(b)(1). *Makarova,* 201 F.3d at 113.

To state a claim, a complaint must plead sufficient facts to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In considering a motion to dismiss, a district court must "accept[] all factual claims in the complaint as true, and draw[] all reasonable inferences in the plaintiff's favor." *Lotes Co. v. Hon Hai Precision Indus. Co.*, 753 F.3d 395, 403 (2d Cir. 2014) (quoting *Famous Horse Inc. v. 5th Ave. Photo Inc.*, 624 F.3d 106, 108 (2d Cir. 2010)) (internal quotation marks omitted).

The Court is also required to read a *pro se* plaintiff's complaint liberally, *see Erickson v. Pardus*, 551 U.S. 89, 94 (2007), and interpret it as raising the strongest arguments it suggests, *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006). However, even a *pro se* plaintiff must establish that the Court has subject matter jurisdiction over the action, as the "burden of demonstrating subject matter jurisdiction lies with the party asserting it." *MLC Fishing, Inc. v. Velez*, 667 F.3d 140, 141 (2d Cir. 2011) (per curiam).

**III.     Discussion**

In this action, Gould brings a RICO claim, alleging that defendants engaged in "a widespread criminal enterprise engaged in a pattern of racketeering activity across State lines, and a conspiracy to engage in racketeering activity involving numerous RICO predicate acts." Compl. at 2 (emphasis omitted). He states that "[t]he primary objective of the racketeering enterprise has been to inflict severe and sustained economic hardship upon Plaintiff, with the intent of impairing, obstructing, preventing and discouraging Plaintiff from using, removing, and interfering with the assets held hostage by Defendants." *Id.* (emphasis omitted). As to the predicate acts, Gould alleges that defendants committed such acts "during the past two(2) [sic] calendar years," which include "illegal seizure of property, breach of contract, perjury, intentional acts of interference with businesses, [] other acts of intentional interference with contracts[, and] . . . mail fraud." *Id.* As relief, Gould seeks to have the Court vacate the Default Judgment, grant him title to the property at issue, enjoin defendants from interfering with his use of the property, and award compensatory damages and punitive damages. *Id.* at 4–5.

This Court lacks subject matter jurisdiction over this controversy under the *Rooker–Feldman* doctrine. The *Rooker–Feldman* doctrine reflects "the principle, expressed by Congress in 28 U.S.C. § 1257, that within the federal judicial system, only the Supreme Court may review state-court decisions." *Hoblock v. Albany Cty. Bd. of Elections*, 422 F.3d 77, 85 (2d Cir. 2005); *see generally Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923); *Dist. of Columbia Ct. of Appeals v. Feldman*, 460 U.S. 462 (1983). It bars a federal district court from exercising jurisdiction over a suit that is "in fact a collateral attack on a final state court judgment." *Lipin v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 202 F. Supp. 2d 126, 133 (S.D.N.Y. 2002).

As the Second Circuit has explained, the *Rooker–Feldman* doctrine applies where four requirements are met:

> First, the federal-court plaintiff must have lost in state court. Second, the plaintiff must complain of injuries caused by a state-court judgment. Third, the plaintiff must invite district court review and rejection of that judgment. Fourth, the state-court judgment must have been rendered before the district court proceedings commenced—*i.e.*, *Rooker–Feldman* has no application to federal-court suits proceeding in parallel with ongoing state-court litigation.

*Hoblock*, 422 F.3d at 85 (quoting *Exxon Mobile Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005)) (internal quotation marks and alterations omitted). "The first and fourth of these requirements may be loosely termed procedural; the second and third may be termed substantive." *Id.*

The procedural requirements are met here.

As to the first requirement, whether the federal plaintiff lost in state court, that question requires the Court separately to consider a question as to *identity* (whether the plaintiff in this action is the same as the party in the state-court proceeding) and a question as to *outcome* (whether that plaintiff *lost* in the state-court action).

As to *identity*, the plaintiff here is Gould, whereas the named defendant in the state-court action was Portage Partners, Inc. But that difference alone does not bar *Rooker–Feldman* from applying. As the Second Circuit has explained, in the context of the *Rooker–Feldman* doctrine, when the party bringing the federal action is not literally identical to the party that lost in state court, a court must consider whether there is sufficient privity, as a matter of federal law, among the two such that the federal plaintiff should be bound by the state outcome. *Hoblock*, 422 F.3d at 90. Under federal law, "a nonparty can be bound by the results of someone else's litigation 'when, in certain limited circumstances, a person, although not a party, has his interests

7

adequately represented by someone with the same interests who is a party.'" *Id.* (quoting *Martin v. Wilks*, 490 U.S. 755, 762 n.2 (1989)). That test is met here. There is clear privity between Gould and Portage Partners: Gould's Complaint treats as synonymous himself and Portage Partners.[5] And public records from Michigan's Department of Licensing and Regulatory Affairs identify "Peter J. Gould" as registered agent, and president, of Portage Partners.[6] And Gould's interest at issue here is identical to the interest of Portage Partners in the state-court litigation: protecting their legal rights to the subject property. The Court therefore holds that Gould's interests were adequately represented by Portage Partners in the state-court action.

As to *outcome*, Gould (and Portage Partners) unambiguously lost in the state-court action, as the Default Judgment was entered against them. *See* Default Judgment; *see also In re Wilson*, 410 F. App'x 409, 410 (2d Cir. 2011) (summary order) (federal-court plaintiff lost in state court by virtue of default foreclosure judgment); *Kropelnicki v. Siegel*, 290 F.3d 118, 129 (2d Cir. 2002) (*Rooker–Feldman* barred claim challenging default judgment); *Roberts v. Perez*, No. 13

---

[5] For example, after alleging that "Portage" constructed the building and parking area at 2400 Yellow Brick Road, the Complaint alleges that "[t]he Plaintiff [Gould] has used the parking area [at 2400 Yellow Brick Road] that *it* built." Compl. at 4 (emphasis added). Similarly, referring to the Default Judgment, the Complaint alleges that defendants "filed a suit in Kalamazoo without giving proper service *to the Plaintiff* [Gould]." *Id.* (emphasis added).

[6] *See* MICHIGAN.GOV, DEP'T OF LICENSING AND REGULATORY AFFAIRS, Corporate Entity Details: Portage Partners, Inc., *available at* http://www.dleg.state.mi.us/bcs_corp/dt_corp.asp?id_nbr=627122&name_entity=PORTAGE%20PARTNERS,%20INC; PORTAGE PARTNERS, INC., 2002 FOREIGN CORPORATION INFORMATION UPDATE, *available at* http://www.dleg.state.mi.us/bcs_corp/image.asp?FILE_TYPE=MAN&FILE_NAME=R200301\2003030\00000502.tif. The Court takes judicial notice of these records, which are available on the State of Michigan's official website. *See Wells Fargo Bank, N.A. v. Wrights Mill Holdings, LLC*, 127 F. Supp. 3d 156, 166 (S.D.N.Y. 2015) ("Courts routinely take judicial notice of [] governmental records" that have been "retrieved from official government websites.") (collecting cases).

Civ. 5612 (JMF), 2014 WL 3883418, at *2–3 (S.D.N.Y. Aug. 7, 2014) (same).  *Rooker–Feldman*'s first requirement is, therefore, satisfied.

The fourth requirement is also clearly satisfied.  The Default Judgment was issued on June 22, 2015.  Gould commenced this action more than three months later, on October 8, 2015.  Thus, the state-court judgment was issued before this federal action began.

Having found *Rooker–Feldman*'s procedural requirements met, the Court turns to the substantive requirements.

The second requirement, that the federal plaintiff complain of injuries caused by a state-court judgment, is the "core requirement from which the others derive" and "[t]he key" to the *Rooker–Feldman* analysis.  *Hoblock*, 422 F.3d at 87.  It is satisfied here.  Gould complains of defendants' "illegal seizure of property," alleging that the "primary objective" of the racketeering conspiracy is to interfere with his access to these "assets held hostage" by defendants, *i.e.*, the real property.  Compl. at 2.  To remedy such interference, Gould asks this Court to vacate the Default Judgment entered by the Michigan court, and award him title to the property.  *Id.* at 4–5.  Gould's alleged injury, then, is a deprivation (of his possession and use of property) that is "produced by a state-court judgment," *Hoblock*, 422 F.3d at 88, which "enjoined [him] from entering onto, occupying, or otherwise using [the] Property," Default Judgment at 1.  The Complaint further alleges that Gould has "spen[t] time and money to have the [Default Judgment] vacated,"[7] expenditures on which his prayer for compensatory damages is partly based.  Compl. at 4–5.  Gould's prayer for relief thus squarely implicates *Rooker–Feldman*.  *See Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 25 (1987) (Marshall, J., concurring) ("Where federal

---

[7] The Complaint does not allege that the judgment was, in fact, vacated.

relief can only be predicated upon a conviction that the state court was wrong, it is difficult to conceive the federal proceeding as, in substance, anything other than a prohibited appeal of the state-court judgment.").

Finally, the third requirement for *Rooker–Feldman* is met here because Gould explicitly asks this Court to review and overturn the Default Judgment. His Complaint specifically asks "[t]hat the Default Judgment be vacated," Compl. at 4, "[t]hat the land in question be titled in [Gould's] name," and that defendants "permanently be barred from interfering" with the use of the property, *id.* at 5. Gould's bid for such relief directly attacks both the Michigan court's holding that Portage Partners lacks any legal interest in the property and its injunction against Portage Partners' further use of it. Affording Gould the relief he requests would necessarily require this Court to reject the state court's Default Judgment. *See* Default Judgment at 1.

It is no answer that Gould's Complaint alleges that defendants obtained the state-court judgment by fraud. He alleges that defendants failed to serve process properly in the state-court suit, and that, to obtain the Default Judgment, they filed a false statement attesting to proper process. *See* Compl. at 4. But the Second Circuit has "never recognized a blanket fraud exception to *Rooker–Feldman*." *Kropelnicki*, 290 F.3d at 128 (internal quotation marks and citation omitted). Courts have therefore consistently held that *Rooker–Feldman* applies notwithstanding claims that a state-court judgment was acquired through fraud. *See, e.g.*, *Swiatkowski v. Citibank*, 745 F. Supp. 2d 150, 167 (E.D.N.Y. 2010) (claims dismissed under *Rooker–Feldman* where "accept[ing] plaintiff's arguments regarding defendants' allegedly fraudulent [submissions to state court] . . . 'would effectively declare the state court judgment fraudulently procured and thus void'" (quoting *Kropelnicki*, 290 F.3d at 129)), *aff'd*, 446 F. App'x 360 (2d Cir. 2011) (summary order); *Bell v. State*, No. 99 Civ. 5809 (AGS), 2000 WL

1273637, at *4 (S.D.N.Y. Sept. 7, 2000) ("The fact that the plaintiff alleges [in federal court] that the State court judgment was procured fraudulently does not remove his claims from the ambit of Rooker–Feldman." (internal quotation marks and citation omitted)).

## CONCLUSION

For the reasons stated above, this Court lacks subject matter jurisdiction to hear this case. Defendants' motion to dismiss is, therefore, granted.[8] The Clerk of Court is instructed to terminate the motion pending at docket number 10 and to close this case. The Clerk of Court is also instructed to mail a copy of this Opinion to plaintiff.

SO ORDERED.

*Paul A. Engelmayer*
Paul A. Engelmayer
United States District Judge

Dated: July 19, 2016
New York, New York

---

[8] In light of this holding, it is unnecessary to consider defendants' alternative grounds for dismissal of the Complaint.

11